HARTZ CONSTRUCTION COMPANY, INC., *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF WESTERN SPRINGS, Defendant-Appellee (Gurrie Rhoads, Indiv., *et al.*, Defendants).

First District (1st Division)   No. 1—08—1895

Opinion filed May 4, 2009.

John B. Murphey and Judith N. Kolman, both of Rosenthal, Murphey & Coblentz, of Chicago, for appellants.

Michael T. Jurusik, Lance C. Malina, and Jacob Karaca, all of Klein, Thorpe & Jenkins, Ltd., of Chciago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

How much statutory authority does a non-home-rule village have when it contracts with a developer to recapture from a third party the

costs of improvements which benefit that third party? To answer that question we examine the applicable statute to determine what it says and what it does not say about recapture agreements.

Plaintiff Hartz Construction Co., Inc.,[1] filed a suit for injunctive relief against defendants Village of Western Springs (the Village), Gurrie Rhoads, Commonwealth Properties Co., LLC, and Rhoads Development Co., seeking a declaratory judgment that a 2002 recapture agreement adopted by the Village was invalid under section 9—5—1 of the Illinois Municipal Code (Code) (65 ILCS 5/9—5—1 (West 2002)). Plaintiff and the Village filed cross-motions for partial summary judgment. The trial court granted the Village's partial summary judgment motion, finding the recapture agreement was valid under the Code. It denied Hartz's motion for partial summary judgment. Plaintiff appeals. We affirm the trial court and remand for further proceedings.

FACTS

Rhoads, Rhoads Development Co., and Commonwealth Properties Co., LLC (Rhoads), are the developers of the "Commonwealth RPUD," which is part of a residential planned unit development in the Village of Western Springs known as the "Commonwealth Development." Plaintiff owns three noncontiguous parcels known as the "Waterford PUD," which were intended to be developed in conjunction with the overall Commonwealth Development. Plaintiff's north and middle parcels are surrounded by Rhoads' properties and the south parcel forms the southern boundary of the Commonwealth Development. The Commonwealth Development is zoned "R-4 Multi-Family Residence District." The Waterford PUD is a proposed single-family townhouse development.

Pursuant to a Village ordinance passed on August 10, 1992, Rhoads was required to make several improvements as a condition for approval to develop the Commonwealth Development. The improvements included constructing a sanitary sewer system, storm water sewer system, water distribution system, roadways, streets, the 53rd Street bridge, sidewalks, right-of-way landscaping, and street lighting. Rhoads also was required to build several water detention ponds. By 2000, Rhoads' development was 75% to 80% complete.

On October 28, 2002, after private negotiations between plaintiff and Rhoads regarding reimbursement for the improvements did not succeed, Rhoads and the Village entered into a recapture agreement pursuant to section 9—5—1 of the Code. The stated purpose of the

---

[1]Hartz Construction Co. is the beneficiary of the Chicago Title land trust no. 17472.

agreement was to reimburse Rhoads for the costs incurred in making improvements that benefitted properties other than his own. The preamble to the recapture agreement specifically noted Rhoads' public improvements benefitted plaintiff's three noncontiguous parcels. Plaintiff's three parcels were the only "benefitted properties" subject to the recapture agreement. Rhoads owned 88% of the property at issue in the recapture agreement, while plaintiff owned 12%. The total cost of public improvements included in the recapture agreement was $3,513,057. The agreement also provided that, if any term or provision was found illegal, the remaining terms and provisions continued to have full force and effect.

The Village passed Ordinance No. 05—2358, which approved plaintiff's request for a permit to develop the middle and south parcels of its Waterford PUD, a total of 10 units. The ordinance noted plaintiff planned to "hold off on preliminary and final approval" of its north parcel. Under the terms of the ordinance, approval of the permit was conditioned on plaintiff paying the Village a per-unit cost of $24,915 to reimburse Rhoads pursuant to the statute. The recapture agreement provided that upon approval of additional units, plaintiff is required to pay $24,915 per each additional unit. The recapture agreement does not require Rhoads to pay an additional fee if he constructs more units.

Plaintiff filed a complaint for declaratory judgment and injunctive relief, seeking a declaration that the recapture fees imposed by the ordinance are arbitrary, capricious, and unlawful. The Village filed the affirmative defenses of estoppel and waiver, alleging plaintiff participated in the recapture agreement negotiations with full knowledge of the terms.

Plaintiff moved for partial summary judgment, seeking a declaration that the recapture agreement is invalid because: (1) the per-unit recapture calculation method is unreasonable and beyond the Village's power: (2) only "over-sized" improvements that were done "primarily" to benefit plaintiff may be subject to recapture; (3) the definition of benefitted properties violates section 9—5—1 of the Code; (4) a recapture agreement cannot seek the recapture of improvement costs which already have been incurred; and (5) the recapture agreement does not recapture actual costs proportionate to plaintiff's use of the public improvements. The Village filed a cross-motion for summary judgment, requesting plaintiff's motion be denied and the entry of a judgment in favor of the Village and Rhoads upholding the validity of the recapture agreement.

The trial court entered partial summary judgment in favor of the Village, finding the recapture agreement and ordinance, except for the

inclusion of Rhoads' landscaping costs, were valid under section 9—5—1 of the Code. The trial court removed the landscaping costs from the recapture agreement because reimbursement for such costs was not specifically provided for under section 9—5—1. Hartz's motion for partial summary judgment was denied. Plaintiff appeals.

DECISION

I. Material Questions of Fact

Plaintiff contends material questions of fact prevented the trial court from entering summary judgment in favor of the Village in this case. Specifically, plaintiff contends the trial court adopted the Village's version of the facts in their entirety in reaching its decision, ignoring several inconsistencies raised by plaintiff. We disagree.

Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when taken in the light most favorable to the nonmovant, show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002); *Midland Properties Co. v. Acme Refining Co.*, 361 Ill. App. 3d 180, 183, 836 N.E.2d 95 (2005). Our review of the trial court's grant of summary judgment is *de novo*. *Midland Properties Co.*, 361 Ill. App. 3d at 183.

When parties file cross-motions for summary judgment, as here, they agree no genuine issue of fact exists, only a question of law is involved, inviting the trial court to decide the issues based on the record before it. *State Farm Fire & Casualty Co. v. Martinez*, 384 Ill. App. 3d 494, 498, 893 N.E.2d 975 (2008).

In this case, the record reflects no genuine issues of material fact remained to preclude the trial court from entering a judgment as a matter of law.

Despite plaintiff's contentions to the contrary, we fail to see an instance where Village engineer Jeffrey Ziegler's affidavit testimony was materially incompatible with, or contradictory to, his earlier deposition testimony. Instead, Ziegler's affidavit merely expounded on several of the points he previously testified to in his deposition, including why he considered estimated costs instead of actual costs when determining the recapture fee, why he did not include several off-site properties in the recapture agreement, and why he believes plaintiff benefitted from the interior-street improvements built by Rhoads.

■ Moreover, the record reflects the trial court did not rely on contested or improper facts when entering a judgment as a matter of law. The trial court's written memorandum and order indicates it carefully analyzed and applied the evidence presented by both parties

in this case. We see no reason to disturb the trial court's determination that the questions presented in the cross-motions for summary judgment could be properly determined as a matter of law. We adopt the trial court's factual findings.

II. Section 9—5—1 of the Code

Because plaintiff's appeal involves the question of whether the recapture agreement adopted by the Village violates section 9—5—1 of the Code, we find it useful to discuss the legislative intent behind the recapture statute before addressing plaintiff's main contentions.

The primary rule in statutory interpretation is to determine and give effect to the intent of the legislature. *In re Application of the County Collector*, 356 Ill. App. 3d 668, 670, 826 N.E.2d 951 (2005). The best indication of legislative intent is the plain language of the statute. *U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334, 346, 837 N.E.2d 74 (2005).

Words in the statute should be construed in context and given their plain and ordinary meaning. *Clark*, 216 Ill. 2d at 346; *In re Application of the County Collector*, 356 Ill. App. 3d at 670. We will not read into a statute any exceptions, limitations, or conditions not expressed by the legislature. *Hudson v. YMCA of Metropolitan Chicago, LLC*, 377 Ill. App. 3d 631, 635, 878 N.E.2d 821 (2007).

Through the imposition of a recapture agreement, a municipality is able to apportion the cost "of local improvements among those of its constituents who will use the improvements." *Beneficial Development Corp. v. City of Highland Park*, 161 Ill. 2d 321, 328-29, 641 N.E.2d 435 (1994). Illinois courts have consistently upheld the use of recapture agreements in home-rule municipalities. *Beneficial Development Corp.*, 161 Ill. 2d at 329, citing *SBL Associates v. Village of Elk Grove*, 247 Ill. App. 3d 25, 617 N.E.2d 178 (1993); *Woodfield Lanes, Inc. v. Village of Schaumburg*, 168 Ill. App. 3d 763, 523 N.E.2d 36 (1988). Section 9—5—1 of the Code provides the statutory requirements for recapture in non-home-rule municipalities, such as the Village of Western Springs. See 65 ILCS 5/9—5—1 (West 2002); *Beneficial Development Corp.*, 161 Ill. 2d at 332.

The plain language of section 9—5—1 tells us the legislature intended to make a broad grant of authority to municipalities in order to recapture a portion of the costs a developer expends on improvements that "may be used for the benefit of property not in the subdivision or planned unit development." 65 ILCS 5/9—5—1 (West 2002). The statute does not refer to "exclusive" use for the benefit of the adjoining property.

Phrases such as "in the opinion of the corporate authorities" and "may be used for the benefit of property" indicate the legislature intended to place very few restrictions on non-home-rule municipalities' power to recapture costs under the section. With this broad grant of authority to the Village in mind, we address plaintiff's contentions that the instant recapture agreement violated the terms of the recapture statute.

III. Per-Unit Method

Plaintiff contends the per-unit method used to calculate its recapture costs was "inherently irrational" and a violation of the statute because it provided fluctuating recapture costs as opposed to a fixed formula like that in *Beneficial Development Corp. v. City of Highland Park*, 161 Ill. 2d 321, 641 N.E.2d 435 (1994) (using an acreage formula to calculate recapture costs). Plaintiff contends Rhoads would receive a windfall because the per-unit method essentially punished plaintiff for building more units while decreasing Rhoads' financial obligation.

The Village authorized Hartz to build 12 units under the recapture agreement. Rhoads was approved to build 129 units. Later, Hartz and Rhoads proposed to build more units than approved under the recapture agreement: 18 for Hartz and 133 for Rhoads. The recapture amount per unit ($24,915) was obtained by dividing the total cost of the Commonwealth Development improvements ($3,513,015) by the total number of units provided in the recapture agreement (141). The recapture amount was not adjusted after the proposal of the additional units.

In calculating the recapture costs, Ziegler said in his affidavit he included amounts for improvements required for any development that would eventually be part of the Commonwealth Development: water mains, sanitary and storm sewers, street work, engineering, surveying, and related legal and planning work for the improvements. To calculate the recapture amount, Ziegler said he used both the amounts provided by Rhoads as his actual costs and the estimates of costs used in Rhoads' letter of credit. Ziegler said both amounts "appeared reasonable according to [his] experience as an engineer." Based on that prior experience, Ziegler decided to use a per-unit method to apportion the recapture costs. In his deposition, Ziegler explained he arrived at the recapture amount by considering the total expenditure on improvements for the entire Commonwealth Development. Ziegler said that a frontage calculation method was reasonable as well.

Hartz contends an acreage or frontage calculation method is most appropriate. We disagree. If an acreage method were used here, Hartz

would have been responsible for 12% of the total acreage of Commonwealth Development. Twelve percent of the total cost of improvements would be approximately $421,561. Using the per-unit method and Hartz's 18 proposed units yields a total of $448,470, which is just over 12% of the total cost of improvements. However, if Hartz builds anything less than 18 units, its per-unit percentage would be less than 12% and, thus less than its total acreage. The per-unit method provides the potential for lower recapture costs. Hartz has not proposed any specific method that would benefit it more.

In addition, Rhoads testified at his deposition that he and Frank Benak, the Village assistant manager and director of fire and inspection services at the time, analyzed several calculation methods, including the acreage method proposed by plaintiff on appeal. They determined the fairest method was the per-unit method. Rhoads said the per-unit method produced the lowest cost for Hartz.

Moreover, while not rising to the level of a judicial admission, Hartz, at one time, offered to pay $19,196 per-unit recapture cost. We recognize the offer was made while the parties were privately negotiating the terms of a potential joint venture. The parties were unable to settle on the terms; however, at that time, Hartz did submit a per-unit offer.

The statute gives the Village a broad grant of authority. It does not restrict the method for calculating recapture costs. 65 ILCS 5/9—5—1 (West 2002). The statute:

> "where, *in the opinion of the corporate authorities*, the facilities, roadways, or improvements *may be used for the benefit* of property not in the subdivision or planned unit development or outside the property for which a building permit has been issued, and the [improvements] are to be dedicated to the public, the corporate authorities may by contract with the subdivider or permittee agree to reimburse and may reimburse the subdivider or permittee for a portion of the costs of [the improvements] from fees charged to owners of property not within the subdivision, planned unit development, or property for which a building permit has been issued ***. The contract shall describe the property outside the subdivision, planned unit development, or property for which a building permit has been issued that *may reasonably be expected to benefit* from [the improvements] that are required to be constructed under the contract and shall specify the amount or proportion of the cost of the facilities, roadways, or improvements that is to be *incurred primarily for the benefit of that property*." (Emphasis added.) 65 ILCS 5/9—5—1 (West 2002).

■ When the improvements may be used for the benefit of the adjoining property, the recapture agreement must name the property

and provide "the amount or proportion" of cost "to be incurred primarily for benefit of that property." 65 ILCS 5/9—5—1 (West 2002). So long as the calculation method provides an amount *or* proportion of the overall improvement costs to which the adjoining property primarily benefits, the method is not restricted. We see no reason why a per-unit method is not within the confines of the statute. See *Hudson*, 377 Ill. App. 3d at 635 (we will not read in exceptions, limitations, or conditions).

We recognize the per-unit method differs from that applied in *Beneficial Development Corp.*; however, the recapture agreement at issue there concerned a home rule village. *Beneficial Development Corp.*, 161 Ill. 2d at 328-29. A village with home rule power can impose recapture costs without relying on an ordinance. *Beneficial Development Corp.*, 161 Ill. 2d at 328-30. A home rule village is exempt from the recapture statute. *Beneficial Development Corp.*, 161 Ill. 2d at 332. Western Springs is not a home rule village. It must follow the recapture statute.

The supreme court said its holding was "not inconsistent" with the statute. *Beneficial Development Corp.*, 161 Ill. 2d at 332. It held a "recapture agreement is enforceable to the extent that it provides for recovery of the [adjoining] property owners' *pro rata* share of the costs involved in making the improvements that would be used by them." *Beneficial Development Corp.*, 161 Ill. 2d at 332. We are bound by the supreme court's holding. Therefore, the test for whether a recapture method is valid is whether it recaptures the proportion of the adjoining property's use of the improvements.

Here, the more units Hartz builds, the more it uses the improvements. We find the per-unit method used in this case satisfies the test.

IV. Benefitted Property

■ Plaintiff contends the recapture fee failed to properly apportion the costs attributed to improvements primarily benefitting its property. Plaintiff contends the recapture cost was unreasonable because Rhoads did not have to "over-size" the improvements on its behalf and the east-west side streets did not primarily benefit its property.

The uncontradicted facts demonstrate plaintiff's property benefitted from the overall, development-wide public improvements included in the recapture cost. All of the included improvements, with the exception of the landscaping the trial court withdrew from the recapture fee, were authorized by the recapture statute. The statute says the "corporate authorities *** may reimburse" the primary developer "for a portion of the cost of the facilities, roadways, or improvements," which include water mains, sanitary sewers, drains,

installation of traffic signals, and other traffic-related improvements, from fees charged to the secondary developer. 65 ILCS 5/9—5—1 (West 2002). The public improvements were completed for the proper functioning of the Commonwealth Development as a whole. Plaintiff's parcels were part of that development and, in turn, benefitted from those improvements. Plaintiff was responsible for repaying its per-unit share of the overall improvements.

The statute does not require the primary developer to "over-size" improvements in anticipation of future development. See 65 ILCS 5/9—5—1 (West 2002). Plaintiff relies on *Beneficial Development Corp.* to support its "over-size" argument. The supreme court in *Beneficial Development Corp.* explained that "over-sized" improvements are those a municipality imposes during construction so future developers can utilize the preexisting improvements. *Beneficial Development Corp.*, 161 Ill. 2d at 331.

That is exactly what happened here. Rhoads testified at his deposition that the public improvements were planned to accommodate Hartz's parcels from the outset. There was no need for imposed "over-sizing" because the improvements were designed to suit the entire Commonwealth Development, which included Hartz's parcels. However, Rhoads did testify the improvements "volume-wise and population-wise" were planned "for more than what [he was] intending to put in," as a result of the Hartz parcels. Rhoads said he "did all kinds of reconfiguration to accommodate Hartz, and that was required by the Village." Rhoads also said the development's main roadway was chosen because it better served the Hartz parcels.

Plaintiff claims the development's east-west interior streets do not "primarily" benefit its properties. It contends it was not responsible for their repayment pursuant to the recapture statute.

Plaintiff's contention fails to account for all of the relevant statutory language. Its argument is based on isolated language, taken out of context. See *Clark*, 216 Ill. 2d at 346. The statute requires the included improvements "may be used for the benefit of" Hartz's parcels. 65 ILCS 5/9—5—1 (West 2002). The benefit need not exclusively apply to Hartz's parcels; the benefit need not be crucial to Hartz's parcels. Rhoads' deposition and Ziegler's deposition and affidavit persuade us the improvements benefitted Commonwealth Development as a whole. There is no testimony or other evidence which lists the improvements and identifies their benefits. Ziegler said he "adjusted [Rhoads'] total submitted costs to reflect the amounts that actually benefitted the entire Commonwealth property area, not just site-specific improvements."

In its interpretation of the relevant statutory language, the trial court said:

"This language does not mean that only improvements which were designed and made primarily for the benefit of property not in the subdivision or planned unit development can serve as a basis for a recapture agreement as argued by Hartz. Rather, under the Recapture Statute, once the corporate authorities determine in their opinion that another property may be benefitted by the improvements at issue, the corporate authorities must then identify the amount or percentage of the improvements which primarily benefit those properties. This is what the Village did here."

We agree. The statute requires a two-step analysis. See 65 ILCS 5/9—5—1 (West 2002). Here, the "corporate authorities," Ziegler and Benak, determined plaintiff's properties may benefit from the public improvements provided to the Commonwealth Development as a whole, then structured plaintiff's recapture cost based on its per-unit portion of those benefits.

We find no merit in plaintiff's unsupported argument that the east-west streets were not subject to recapture because Rhoads originally constructed them as private streets. The statute does not restrict recapture to the original intent of the improvements. Rather, the statute says recapture may be imposed once the improvements "are to be dedicated to the public." 65 ILCS 5/9—5—1 (West 2002). The streets have been or will be dedicated to the public. Moreover, the fact that the Village declined Rhoads' requested recapture agreement in 1992 is of no consequence.

V. Excluded Properties

■ Plaintiff contends the trial court erred in finding it was reasonable for the recapture agreement to exclude off-site properties that reasonably benefit from the public improvements.

According to Ziegler, the Village decided to exclude the commercially zoned area north of the Commonwealth Development in the recapture analysis because at the time the agreement was entered, poor soil conditions rendered development of the lot economically unfeasible. Two single-family residential developments north of the Commonwealth Development also were excluded from the recapture agreement. One was owned by plaintiff and one was owned by Rhoads. These developments required their own improvements.

There is nothing in the recapture statute to support plaintiff's contention. The statute does not impose that mandatory obligation. It does not require that all properties which *could* benefit from the improvements be included in the recapture calculation. Rather, the statute permits "corporate authorities" to determine, based on their "opinion," which properties "may" benefit from the improvements.

65 ILCS 5/9—5—1 (West 2002). The statute then requires that the "corporate authorities" name those properties. 65 ILCS 5/9—5—1 (West 2002). Under the statute, "corporate authorities" have the discretion to decide which properties to include.

Here, Ziegler and Benak determined the improvements "may be used for the benefit of" Hartz's parcels. 65 ILCS 5/9—5—1 (West 2002). The parcels were named in the recapture agreement. Whether the complained-of properties enjoyed some benefit from the public improvements is of no consequence. The statutory obligations were fulfilled.

VI. Timing of Improvements

•5 Plaintiff contends the recapture cost impermissibly includes improvements constructed in 1994, well before the 2002 recapture agreement was signed. Plaintiff contends only prospective improvements may be included in the recapture cost.

The statute does not support plaintiff's contention. The statute says:

> "The contract shall provide that the municipality shall collect fees charged to owners of property not within the subdivision, planned unit development, or property for which a building permit has been issued *at any time before the connection to and use of* the [improvements] by the respective properties of each owner." (Emphasis added.) 65 ILCS 5/9—5—1 (West 2002).

The only statutory requirement regarding timing of the improvements is that the recapture cost must be collected before the secondary developer connects to and uses the improvements.

Here, the payment of its recapture costs was a threshold requirement for plaintiff to receive its building permits. Plaintiff has not connected to or used the Commonwealth Development improvements. *Cf. Wiseman-Hughes Enterprises, Inc. v. Reger*, 248 Ill. App. 3d 854, 858, 617 N.E.2d 1310 (1993) (recapture costs could not be awarded where the recapture agreement was executed after the defendants connected to the improvement at issue). The improvements constructed before the entry of the 2002 recapture agreement are permissibly included in plaintiff's recapture costs.

The statute requires that the improvements "are to be dedicated to the public." 65 ILCS 5/9—5—1 (West 2002). There is no evidence the remaining improvements will not be dedicated to the public in the same manner as those that have already been dedicated. Benak testified at his deposition that all of the improvements, including those yet to be approved in Phase II and Phase III, will be dedicated. There is no evidence to the contrary. Rather, the recapture agreement specifies

the public improvements will be dedicated to the Village. The recapture agreement properly included the challenged improvements.

VII. Engineer-Estimated Costs

■ Plaintiff contends the recapture cost is based improperly on estimated costs instead of the actual costs required by the statute.

The recapture statute requires the contract "specify the amount or proportion of the cost" of the improvements. 65 ILCS 5/9—5—1 (West 2002). The statute does not restrict the determination of the "amount or proportion of the cost" to actual costs. The statute does not prohibit the use of estimated costs. The supreme court in *Beneficial Development Corp.* found engineer-generated estimates were adequate for calculating recapture fees. *Beneficial Development Corp.*, 161 Ill. 2d at 332-33. The supreme court did not criticize the use of estimated costs.

Here, Ziegler submitted a cost estimate based on 20 years of civil engineering experience, estimates for yet-to-be constructed improvements, and Rhoads' calculation of costs for the completed improvements. The estimates used to formulate the recapture costs were permissible under the statute.

Plaintiff's contention that estimates are impermissible in calculating recapture costs runs contrary to its contention that it can be responsible only for the repayment of prospective improvements. By definition, the costs of prospective improvements are estimates.

At oral argument, Hartz argued the use of estimated costs vitiates the recapture agreement because interest must be based on "expended" costs pursuant to the statute. This contention was not raised in any of Hartz's briefs. It is waived. See 210 Ill. 2d R. 341(h)(7) ("[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing").

CONCLUSION

There is good reason for enforcing recapture agreements, even though the third party to the contract (here, Hartz) is bound by an agreement it did not consent to and did not bargain for. The supreme court said in *Beneficial Development Corp.*:

"Municipalities frequently require that developers construct improvements so that the improvements are able to withstand larger capacities than the developers require. In this manner, municipalities facilitate future development because subsequent developers are able to utilize preexisting improvements. [Citation.] The facilitation of future development serves a public purpose, and any private benefit to the developers is merely ancillary." *Beneficial Development Corp.*, 161 Ill. 2d at 331.

The case before us reflects the "public purpose" referred to in *Beneficial Development Corp.* The recapture contract looked to future development. The facilities built by Rhoads, at the Village's urging, assumed future development like the one Hartz has in mind. It was not a perfect recapture agreement, but it complied with the provisions of section 9—5—1 of the Code and the requirements of *Beneficial Development Corp.* It was a reasonable recapture agreement. That is good enough.

We affirm the trial court's grant of partial summary judgment to the Village, and its denial of partial summary judgment to Hartz. We remand this cause to the trial court for further proceedings.

Affirmed and remanded.

R. GORDON, P.J., and HALL, J., concur.