# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Hartz Construction Co. v. Village of Western Springs*, 2012 IL App (1st) 103108

| | |
|---|---|
| Appellate Court Caption | HARTZ CONSTRUCTION COMPANY, INC., and CHICAGO TITLE LAND AND TRUST COMPANY, as Trustee under Trust No. 17472 dated June 10, 2003, Plaintiffs, v. THE VILLAGE OF WESTERN SPRINGS, a Municipal Corporation; GURRIE C. RHOADS, Individually; COMMONWEALTH PROPERTIES COMPANY, LLC; and RHOADS DEVELOPMENT COMPANY, Defendants (The Village of Western Springs, a Municipal Corporation, Counterplaintiff and Counterdefendant-Appellee; Gurrie C. Rhoads, Individually; Commonwealth Properties Company, LLC; and Rhoads Development Company, Counterdefendants and Counterplaintiffs-Appellants; Hartz Construction Company, Inc., and Chicago Title Land and Trust Company, as Trustee under Trust No. 17472 dated June 10, 2003, Counterplaintiffs and Counterdefendants-Appellees). |
| District & No. | First District, Third Division<br>Docket No. 1-10-3108 |
| Filed | February 8, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a recapture agreement pertaining to the development of property in defendant village, the indemnification clause in the agreement obligated defendant developers to reimburse the village for its attorney fees and costs incurred in defending itself in the underlying suit brought by plaintiff construction company; furthermore, the village had the authority under the Illinois Municipal Code to vacate certain property and allow plaintiff to purchase that property, and defendant developers failed to establish a genuine issue of material fact to preclude summary judgment requiring them to dedicate the subject property as a condition of receiving the benefits afforded them by the ordinance that approved their planned unit development. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CH-0281; the Hon. Mary K. Rochford, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Tressler LLP, of Bolingbrook (Jeffrey M. Alperin, of counsel), for appellants. |
| | Klein, Thorpe & Jenkins, Ltd., of Chicago (Michael T. Jurusik, Lance C. Malina, and Jacob Karaca, of counsel), for appellee Village of Western Springs. |
| | Rosenthal, Murphey, Coblentz & Donahue, of Chicago (John B. Murphey and Judith N. Kolman, of counsel), for appellees Hartz Construction Company and Chicago Title Land and Trust Company. |
| Panel | PRESIDING JUSTICE STEELE delivered the judgment of the court, with opinion. |
| | Justices Neville and Murphy concurred in the judgment and opinion. |

**OPINION**

¶ 1    This matter involves the recapture agreement entered into between the defendants, which comes before us for a second time on appeal. In *Hartz Construction Co. v. Village of Western Springs*, 391 Ill. App. 3d 75 (2009), we affirmed the trial court's summary judgment for defendant Village of Western Springs (Village) and rejected plaintiff Hartz Construction Company's[1] (Hartz) challenge of the recapture fee methodology under the agreement.

---

[1]Hartz, which is the beneficiary of the Chicago Title land trust number 17472, is not a party to two of the counts in the counterclaims at issue in this appeal. The trial court granted Hartz's petition to intervene as a coplaintiff with the Village in count III of its amended counterclaim against the Rhoads Defendants regarding the latter's dedication of certain real property that Hartz could purchase pursuant to a Village ordinance. Hartz and coplaintiff Chicago Title Land and Trust Company, as trustee under trust number 17472 dated June 10, 2003, filed a brief joining the Village's arguments on appeal, except the argument regarding count II of the Village's amended counterclaim (Rhoads Defendants' indemnification to the Village).

¶ 2        In the instant appeal, defendants Gurrie C. Rhoads, Commonwealth Properties, LLC, and Rhoads Development Company (collectively the Rhoads Defendants), appeal an order of the circuit court of Cook County granting summary judgment to the Village by virtue of granting the Village's motion to reconsider and denying the Rhoads Defendants' cross-motion to reconsider the trial court's prior summary judgment rulings on certain counts in the parties' amended counterclaims. On appeal, the Rhoads Defendants argue the trial court erred in finding: (1) the recapture agreement obligates them to indemnify the Village for attorney fees and costs incurred in this litigation where the Rhoads Defendants contend the Village breached an implied duty of cooperation; (2) the Village had authority under section 11-91-1 of the Illinois Municipal Code (Code) (65 ILCS 5/11-91-1 (West 2008)) to vacate certain real property under an ordinance, which would also allow Hartz to purchase the property for additional proposed construction in the Village; and (3) the Rhoads Defendants had to dedicate certain real property to the Village pursuant to an ordinance that approved the Rhoads Defendants' residential planned unit development (Commonwealth Development) in the Village and a subsequent resolution approving the dedication. For the following reasons, we affirm the circuit court's judgment in the Village's favor.

¶ 3                                    I. BACKGROUND

¶ 4        This court's prior opinion contains a recitation of general facts, which we incorporate in pertinent part herein:

        "Rhoads, Rhoads Development Co., and Commonwealth Properties, Co., LLC (Rhoads) are the developers of the 'Commonwealth RPUD,' which is part of a residential planned unit development in the Village of Western Springs known as the 'Commonwealth Development.' [Hartz] owns three noncontiguous parcels known as the 'Waterford PUD,' which were intended to be developed in conjunction with the overall Commonwealth Development. [Hartz's] north and middle parcels are surrounded by Rhoads' properties and the south parcel forms the southern boundary of the Commonwealth Development. The Commonwealth Development is zoned 'R-4 Multi-Family Residence District.' The Waterford PUD is a proposed single-family townhouse development.

        Pursuant to a Village ordinance [No. 92-1844] passed on August 10, 1992, Rhoads was required to make several improvements as a condition for approval to develop the Commonwealth Development. The improvements included constructing a sanitary sewer system, storm water sewer system, water distribution system, roadways, streets, the 53rd Street bridge, sidewalks, right-of-way landscaping, and street lighting. Rhoads also was required to build several water detention ponds. By 2000, Rhoads' development was 75% to 80% complete.

        On October 28, 2002, *** Rhoads and the Village entered into a recapture agreement pursuant to section 9-5-1 of the [Municipal] Code. The stated purpose of the agreement was to reimburse Rhoads for the costs incurred in making improve-ments that benefitted properties other than [their] own. The preamble to the recapture agreement specifically noted Rhoads' public improvements benefitted [Hartz's] three noncontiguous parcels.

-3-

[Hartz's] three parcels were the only 'benefitted properties' subject to the recapture agreement. Rhoads owned 88% of the property at issue in the recapture agreement, while [Hartz] owned 12%. The total cost of the public improvements included in the recapture agreement was $3,513,057. The agreement also provided that, if any term or provision was found illegal, the remaining terms and provisions continued to have full force and effect." *Hartz*, 391 Ill. App. 3d at 77-78.

In 1891, a plat of dedication shows the disputed property at issue, the 50th and 52nd Street rights-of-ways west of Flagg Creek and east of Commonwealth Avenue, was first dedicated to the Village. In 1973, the Village passed Ordinance number 1404, which vacated portions of Commonwealth Highway and certain intersected streets in the Forest Hills subdivision within the Village.

¶ 5        As early as 1991, the Rhoads Defendants engaged in discussions with the Village about the Commonwealth Development, a projected four-phase construction. The Rhoads Defendants and Hartz conducted negotiations about the development and the fee calculation methodology for the intended recapture agreement. After the developers' discussions were unsuccessful, the Rhoads Defendants and the Village subsequently entered into the recapture agreement in October 2002.

¶ 6        In Ordinance No. 04-2311, dated September 27, 2004, the Village amended section 3 of Ordinance No. 92-1844, which approved the construction of Commonwealth Development in the Village on property along Commonwealth Avenue in the Flagg Creek area. The area was rezoned for the four-phase construction project. The Rhoads Defendants would make infrastructure and other improvements to the area, including installing streetlights and sewer mains. In June 2004, the Rhoads Defendants sought reconfiguration of the area to include building 4 more townhome units, increasing the total number of approved units from 129 to 133. The design plans dated July 7, 2004, were approved by the Village. In accomplishing the reconfiguration and realignment of the area on Commonwealth Avenue south of 53rd Street, the Rhoads Defendants were to dedicate to the Village the public right-of-way Outlot A, which was described as "approximately 3,150.00 square feet in area and located north of and adjacent to 52nd Street and east of Commonwealth Avenue and the Hartz parcel." In a letter dated July 22, 2004, sent by the Rhoads Defendants to the Village, they agreed to dedicate the real property commonly referred to as Outlot A in consideration of the allowances for the construction.

¶ 7        Subsequently, the Village passed Ordinance No. 05-2358, dated October 24, 2005, in which it approved Hartz's request to develop 10 townhomes for a residential PUD located adjacent to Commonwealth Avenue south of the 50th Street right-of-way on Hartz's middle and south parcels. These two parcels are referred to in the record as Waterford PUD #2 and Waterford PUD #3, respectively. Additionally, the two parcels are bounded by Flagg Creek to the east and family residential properties east of Flagg Creek, and zoned R-4 multifamily residence district surrounded by the Commonwealth Development. Further, the ordinance noted Hartz planned to "hold off on preliminary and final approval" of its north parcel, which is referred to in the record as Waterford PUD #1. However, under the terms of the ordinance, approval of the permit was conditioned on Hartz paying the Village the agreed recapture fee to reimburse Rhoads. Moreover, the ordinance indicated the Village "agree[d] to take the

necessary actions to sell Outlot D-3 *** to [Hartz] so that the land [could] be incorporated into the Waterford PUD #2 (Middle Parcel). After [a credit was] applied, [Hartz] agree[d] to pay $12,450.00 for title to Outlot D-3."

¶ 8    On January 5, 2006, Hartz brought the underlying suit seeking injunctive and declaratory relief against the Village and the Rhoads Defendants that the recapture of certain costs pursuant to the recapture agreement between the Rhoads Defendants and the Village for "benefitted properties," which included those owned by Hartz as stated in the approving ordinance, was invalid. As previously mentioned, this court rejected Hartz's challenge on appeal.

¶ 9    On February 27, 2006, the Village approved and accepted the plat of dedication of a public right-of-way of property referred to as "Outlot D-3 (also known as Outlot A)" in Resolution No. 06-1915. The resolution referred to the proposed dedication to the Village at no charge as the property "contemplated" in Ordinance No. 04-2311. The property was described as located north of 52nd Street and east of Commonwealth Avenue, as an extension of the 52nd Street public right-of-way in the Village.

¶ 10   On July 20, 2006, the Village filed an amended four-count counterclaim. Count I sought declaratory relief to find the Village had no obligation to reimburse the Rhoads Defendants for any uncollected recapture costs per a provision in the recapture agreement. In count II, the Village asserted that the "Rhoads [Defendants] must reimburse the Village for all attorney[ ] fees and costs incurred over the course of the litigation," including costs for asserting and defending counterclaims arising from the lawsuit. Count III requested declaratory judgment and injunctive relief, alleging the Rhoads Defendants had to transfer title of real property referred to as "Outlot A, now known as Outlet D-3"[2] to the Village pursuant to the ordinance that enabled the Rhoads Defendants to construct Commonwealth Development and a subsequent resolution that the Village passed. Lastly, count IV sought declaratory relief that the Village was entitled to $448,470 in recapture fees from Hartz pursuant to the recapture agreement. Counts I and IV of the Village's amended counterclaim are not at issue in this appeal.

¶ 11   Subsequently, the Village passed Ordinance No. 06-2406 on August 28, 2006, regarding Hartz's petition for approval to develop eight townhomes on its north parcel (referred to in the record as Waterford PUD #1) and Hartz's request that a portion of the 50th Street right-of-way be vacated, which the ordinance also described. Hartz submitted development plans and a subdivision plat for the proposed townhomes for the Village's consideration and approval. Further, the ordinance indicates the Commonwealth PUD Homeowner's Association supported Hartz's petition, particularly its request to relocate a detention basin from one area to another lot. Moreover, the ordinance notes the Village was amending Ordinance No. 92-1844 to allow the eight townhomes to be built on Outlot D-1.

¶ 12   On September 7, 2006, the trial court granted Hartz's petition to intervene as a coplaintiff in count III of the Village's amended counterclaim. On October 18, 2006, the Rhoads

_____

[2]The Rhoads Defendants denied, and continue to deny on appeal, that the real property is the same piece of property they were required to dedicate in Ordinance No. 04-2311.

Defendants filed their amended answer and affirmative defenses to the Village's amended counterclaim, along with their amended three-count counterclaim seeking relief against the Village. For purposes of this appeal, the significant remaining count III concerned whether the Village had the authority to vacate the real property at issue pursuant to an ordinance that also allowed Hartz to purchase the property from the Village.[3] As an affirmative defense to count III of the Village's amended counterclaim, the Rhoads Defendants asserted the Village engaged in an *ultra vires* act by adopting Resolution No. 06-1915. The Rhoads Defendants also disputed a prior Village ordinance made the dedication of the referenced property a condition for allowing the construction of the Commonwealth Development. Alternatively, the Rhoads Defendants argued that the Village could only sell the property to Hartz pursuant to the *cy pres* doctrine.

¶ 13    During the course of the litigation, the parties engaged in discovery, including taking depositions.

¶ 14    On August 17, 2009, the Village filed a motion for partial summary judgment on the counts in its amended counterclaim against the Rhoads Defendants (counts II and III) and on count III of the Rhoads Defendants' amended counterclaim. On December 18, 2009, after briefing and oral argument by the parties, the trial court issued a written memorandum and order granting the Village's motion for summary judgment in part. In particular, the trial court entered judgment in the Village's favor on the indemnification issue (count II of the Village's amended counterclaim) and ruled the Village had authority to vacate the property for Hartz's purchase pursuant to an ordinance.

¶ 15    However, the trial court concluded genuine issues of material fact precluded summary judgment on count III of the Village's and the Rhoads Defendants' amended counterclaims, respectively, reasoning that the relevant ordinance did not constitute a binding contract between the Village and the Rhoads Defendants, and the Village did not sufficiently address the *ultra vires* affirmative defense asserted by the Rhoads Defendants.

¶ 16    Subsequently, the Village filed a motion to reconsider the trial court's rulings against them. Attached to the Village's motion was the affidavit of Martin Scott, its director of community development, with plats and maps attached, indicating the Rhoads Defendants had received permits as a part of the Commonwealth PUD contemplated in Ordinance No. 04-2311. The Rhoads Defendants also filed a motion to reconsider the denial of their summary judgment motion regarding the indemnification issue.

¶ 17    On May 27, 2010, the trial court issued a memorandum and order granting the Village's motion to reconsider in its entirety, and consequently, also granted summary judgment to the Village. In sum, the trial court's order concluded: (1) the recapture agreement did not contain a duty of cooperation and the Rhoads Defendants were obligated to indemnify the Village for its attorney fees and costs incurred in defending the Hartz litigation and count I of the Rhoads Defendants' amended counterclaim; (2) the Village could vacate and convey the

---

[3]According to the Rhoads Defendants' opening brief and by defense counsel in response to the court's inquiry at oral argument, their *quantum meruit* claim remains pending before the trial court. Neither the Village nor Hartz disputes this procedural account in their respective briefs.

disputed property to Hartz for compensation by the Waterford Ordinance No. (05-2358) pursuant to the relevant provision in the Municipal Code; and (3) the Rhoads Defendants had to dedicate a certain parcel of property to the Village as a result of receiving benefits of and pursuant to Ordinance No. 04-2311 and per Resolution No. 06-1915.

¶ 18    Additionally, in its written ruling on the parties' motions to reconsider, the trial court upheld the dismissal, with prejudice, of counts I and II of the Rhoads Defendants' amended counterclaim. Of note, counts I and II were previously dismissed with leave to amend in an order entered on February 13, 2007, and before the Rhoads Defendants opposed the Village's motion for summary judgment at issue. In its memorandum and order, the trial court also noted the Rhoads Defendants did not amend the counts. The Rhoads Defendants do not challenge the trial court's ruling dismissing these counts with prejudice in this appeal.

¶ 19    On September 17, 2010, the trial court entered an agreed order containing a finding of no just reason delaying appeal of its May 27, 2010, order pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). The Rhoads Defendants filed a timely appeal to this court on October 15, 2010.

¶ 20                                    II. DISCUSSION

¶ 21    This appeal comes to us after the trial court granted summary judgment for the Village by virtue of granting the Village's motion to reconsider the trial court's prior summary judgment rulings on issues related to the subject property and denying the Rhoads Defendants' motion to reconsider its previous summary judgment ruling in the Village's favor on the indemnification issue.

¶ 22    A party is entitled to summary judgment where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). The documents are construed strictly against the movant and in the light most favorable to the nonmovant. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). Summary judgment is a drastic means of disposing of litigation and should be granted only when the movant's right to relief is clear and free from doubt. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 23    The purpose of summary judgment motions is not for the trial court to try a question of fact, but to determine if a triable issue of fact exists. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). In order to survive summary judgment, the nonmoving party does not have to prove its case, but the party must present some factual basis which arguably entitles the party to a judgment. *Id.* We review a ruling on summary judgment *de novo*. *Outboard Marine*, 154 Ill. 2d at 102; *Judge-Zeit v. General Parking Corp.*, 376 Ill. App. 3d 573, 578 (2007). *De novo* review means that we " 'examine the evidence unconstrained by the reasoning of the trial court.' " *Merca v. Rhodes*, 2011 IL App (1st) 102234, ¶ 40 (quoting *John E. Reid & Associates, Inc. v. Wicklander-Zulawski & Associates*, 255 Ill. App. 3d 533, 538 (1993), citing *Outboard Marine*, 154 Ill. 2d at 102); see also *Seitz-Partridge v. Loyola University of Chicago*, 409 Ill. App. 3d 76, 87 (2011) (*de novo* standard of review on denial of motion to

reconsider based upon the trial court's application of existing law).

¶ 24   On appeal, the Rhoads Defendants argue the trial court erred in granting summary judgment for the Village based upon an indemnification provision with the Village under the parties' agreement. The Rhoads Defendants also argue the trial court erred in granting summary judgment for the Village by finding the Village had authority to vacate the subject property for Hartz's purchase and that the Rhoads Defendants were obligated to dedicate certain property to the Village. We will discuss each of the Rhoads Defendants' arguments in turn.

¶ 25                                    A. Indemnification

¶ 26   First, the Rhoads Defendants argue they were not obligated to indemnify the Village for all costs and attorney fees associated with the litigation, including the filing of its counterclaim against the Rhoads Defendants, pursuant to the recapture agreement, because the Village breached an implied duty of cooperation that excused their duty to pay. The Rhoads Defendants have described various events prior to and after the *Hartz* litigation was commenced which they proffer as evidence of the Village's lack of cooperation purportedly required by the parties' agreement. The gist of the Rhoads Defendants' argument is the Village breached the agreement by: (1) refusing to meet with the Rhoads Defendants' attorney to discuss the Village's "interests" and coordinate a defense; (2) filing counterclaims against the Rhoads Defendants; and (3) sending a letter that expressed uncertainty about upholding the recapture agreement after Hartz questioned the recapture fee methodology in the recapture agreement. Indeed, the Rhoads Defendants maintain the Village worked with Hartz against them.

¶ 27   We look to the parties' agreement to ascertain the parties' intent. The interpretation of a contract is a question of law reviewed *de novo*. See *Doornbos Heating & Air Conditioning, Inc. v. Schlenker*, 403 Ill. App. 3d 468, 488 (2010) (in construing a written contract, court's primary objective is ascertaining and giving effect to the parties' intent as reflected in the agreement). Paragraph nine of the recapture agreement provides the following regarding indemnification to the Village:

"[T]he DEVELOPER further agrees to indemnify and hold harmless and defend the Village of Western Springs, and its former, current and future officials, agents, servants, employees, attorneys and insurers and/or successors in interest of any kind, for and from any and all claims, actions, omissions, losses, injuries, lawsuits, counterclaims, debts, dues, obligations, judgments, awards, demands, liens, expenses, attorneys' fees, costs, and expenses and costs of litigation, expert witness fees and consultant fees, and liability for damages of any kind and causes of action of any kind and nature, whether known or unknown at this time, whether present or future or contingent, that are brought or filed against the Village of Western Springs, or any of its former, current and future officials, agents, servants, employees and insurers and/or successors in interest of any kind, by any person, including without limitation George Bruckert or any person with an actual or purported ownership interest in the SUBJECT PROPERTY or the BENEFITTED PROPERTIES, arising out of, relating to, connected with, or in any way associated with

-8-

this Agreement. ***

　　In the event that any such claim, action, cause of action or lawsuit is brought or filed, the Village of Western Springs, and its former, current and future officials, employees, servants, agents, attorneys, insurers, and/or successors in interest sued thereunder, shall have the right to determine the attorney(s) of its, his, hers or their choice to represent and defend their interests in any legal or administrative action, all at the DEVELOPER'S expense pursuant to this Agreement."

A plain reading of the provision does not contain any express language mandating a duty of cooperation by the Village. At oral argument, however, while conceding the parties' agreement contained no express language, the Rhoads Defendants nonetheless maintain that every contract contains an implied duty of cooperation as part of the duty of good faith and fair dealing. As such, the Rhoads Defendants assert, the contract did not require express language to require the Village to cooperate with them as they state.

¶ 28　　The Rhoads Defendants correctly indicate, as the trial court also acknowledged, every contract contains an implied duty of good faith and fair dealing. See, *e.g.*, *Seip v. Rogers Raw Materials Fund, L.P.*, 408 Ill. App. 3d 434, 443 (2011). However, just as the trial court rejected the Rhoads Defendants' attempt to extend the implied duty to include a duty of cooperation, we similarly reject said defendants' attempt to extend the well-established rule to interpreting the unambiguous contractual language before us. See *id*. ("The duty [of good faith and fair dealing], however, is not an independent source of duties for the parties to a contract and is 'used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions.' " (quoting *Fox v. Heimann*, 375 Ill. App. 3d 35, 42 (2007))).

¶ 29　　In support of their contention that the Village breached a duty to cooperate by its actions, the Rhoads Defendants rely upon *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178 (1991). In *Waste Management*, 144 Ill. 2d at 202, which the Rhoads Defendants cite, our supreme court concluded that the absence of express words stating a duty to cooperate in the parties' agreement (insurance policy) at issue did not prevent finding such a duty could be reasonably inferred. However, we find their reliance on *Waste Management*'s holding is misplaced based upon the provision before us in the record.

¶ 30　　In *Waste Management*, our supreme court ruled that the attorney-client privilege and work product doctrine did not bar disclosure of documents during discovery proceedings in a declaratory action involving an insurer and its insured where the insurance policy at issue contained a cooperation clause. *Waste Management*, 144 Ill. 2d at 191. The supreme court's narrow holding in *Waste Management* found a duty of cooperation related to discovery proceedings in light of express language stating the insured was to provide information and assistance as reasonably required by the insurer contained in the parties' agreement. *Id*. at 191-92. Even the *Waste Management* court noted that where the policy provisions are clear and unambiguous, the court has a duty to enforce the agreement's plain language. *Id*. While we agree that these parties do not have to match the classic profile of an insurer and insured for the concepts to apply, we nonetheless find the Rhoads Defendants have failed to cite any persuasive legal authority holding all contracts contain an implied duty to cooperate. Hence,

we decline to infer such a duty exists here.

¶ 31    Furthermore, the Rhoads Defendants rely upon other noninsurance cases, such as *Kipnis v. Mandel Metals, Inc.*, 318 Ill. App. 3d 498 (2000), to support their contention. In *Kipnis*, the appellate court reversed summary judgment where it found that the appellee (the former employer) breached a duty of cooperation by refusing to provide the appellant (a former employee) with financial information needed to make a *bona fide* offer of purchase pursuant to the parties' agreement. *Kipnis*, 318 Ill. App. 3d at 505. The court agreed an implied condition of cooperation existed where such cooperation was deemed necessary for the other party's performance. *Id*.

¶ 32    Unlike *Kipnis*, the instant facts do not demonstrate that even if such cooperation was implied, the Rhoads Defendants have not demonstrated why the Village needed to cooperate with the Rhoads Defendants as described or identify its "interests" to the Rhoads Defendants to meet their obligation to indemnify and defend the Village for litigation costs incurred in this litigation. At oral argument, the Rhoads Defendants conceded that the Village was in the best position to determine its interests, but maintained that a duty to select counsel could not be equated as having the right to control the litigation.

¶ 33    When viewing the indemnification clause in the parties' agreement, the provision clearly states that the Rhoads Defendants, as the developer, agreed to indemnify and hold harmless and defend the Village against any and all claims, including counterclaims. Additionally, the agreement provides that the Village "shall have the right to determine the attorney(s) of its, his, hers or their choice to represent and defend their interests in any legal or administrative action, all at the [Rhoads Defendants'] expense." Based upon the clear language of the agreement, the agreement does not require the Village to acquiesce to the Rhoads Defendants' choice of attorney or coordinate a joint defense with the Rhoads Defendants. Inferring that an obligation to indemnify and defend includes a duty of cooperation would read more into the parties' agreement than what they bargained for and ignore the express language that the Village was conferred the right to select its counsel to represent and defend its interests. Notwithstanding the Rhoads Defendants' contention at oral argument that it would be "absurd" to read the provision as the Rhoads Defendants agreeing to pay for the Village's counterclaim against them, the clear and unambiguous language in the agreement they executed prevails over the unfortunate consequences which they now face for undertaking an express obligation to indemnify the Village.

¶ 34    Moreover, the Rhoads Defendants argue that the Village should have invoked another clause of the agreement as a defense to Hartz's challenge of the recapture agreement. In particular, the Rhoads Defendants refer to paragraph 11 of the agreement, which provides that "it is expressly understood and agreed by the parties that this Agreement may be pleaded by the VILLAGE, or any other person covered hereunder, as a complete defense to, and in bar of, any claim, action or proceeding *** on account of any of the matters set forth in this Agreement." The Village counters that the Rhoads Defendants forfeited this argument, since it was not raised before the trial court. The Rhoads Defendants' motion to reconsider failed to assert this as a basis for finding a breach. Consequently, the Rhoads Defendants should be deemed as forfeiting this argument on appeal. See *Illinois Farmers Insurance Co. v. Cisco*, 178 Ill. 2d 386, 395 (1997) (argument not made in trial court forfeited on appeal).

Even if this panel decided that forfeiture does not apply (see *Johnson v. Johnson*, 386 Ill. App. 3d 522, 533 (2008) (forfeiture is a limitation on the parties, not the reviewing court)), the Rhoads Defendants' argument still fails as it is undisputed that the Village defended the validity of the recapture agreement against Hartz, concluding in a successful appeal, which the trial court also noted. Although the Rhoads Defendants disputed summary judgment as a litigation strategy, one could reasonably argue that the Village strategically countered Hartz's summary judgment with a cross-motion seeking to uphold the recapture agreement, which it successfully defended before the trial and appellate courts.

¶ 35    Assuming *arguendo* the agreement contained an implied duty of cooperation, we conclude, based on the undisputed material facts in the record, that the Village and the Rhoads Defendants had a conflict of interest that extinguished any such duty. Courts have found that an insured is relieved of a duty to cooperate where a conflict of interest arises between the insured (indemnified party) and the insurer (indemnifying party). See, *e.g.*, *Montgomery Ward & Co. v. Wetzel*, 98 Ill. App. 3d 243, 252 (1981); *Illinois Municipal League Risk Management Ass'n v. Seibert*, 223 Ill. App. 3d 864, 875 (1992).

¶ 36    Here, the facts in the record suggest the Village and the Rhoads Defendants had a conflict of interest, namely, in what litigation strategy to employ and about further development (allowing Hartz to develop residential units) in the Commonwealth Development area on properties that the Village concluded were benefitted under the recapture agreement and related ordinance. While the Village's counterclaim against the Rhoads Defendants may not have been the optimal situation, we are persuaded by the record that the Village had no choice but to assert what it believed were its rights under the agreement, to preserve its claims for recovery, and to protect its interests to ensure that the Rhoads Defendants paid its litigation costs, particularly since the record contains correspondence from the Rhoads Defendants to the Village questioning whether it was required to pay the Village's attorney fees in light of certain events.

¶ 37    Similarly, the record persuades us that the Village had no choice but to seek a judicial declaration concerning its authority to vacate the subject property and seek compensation from Hartz pursuant to the relevant ordinance, which the Rhoads Defendants challenged. Indeed, the real conflict appears to stem from the Rhoads Defendants objecting to the Village allowing Hartz, another developer, to construct townhomes in the area and refusing to take their side (in the manner the Rhoads Defendants desired) in the developers' controversy about the recapture agreement when the negotiations between them collapsed. We disagree with the Rhoads Defendants that the Village created the conflict in order to excuse them from the clear and unambiguous duty to indemnify the Village.

¶ 38    Based upon the foregoing, we find the trial court properly upheld summary judgment for the Village in declaring that the Rhoads Defendants had to pay its litigation costs and attorney fees incurred in the instant litigation, including for defending Hartz's challenge to the recapture agreement (upheld on appeal) and count I of the Rhoads Defendants' amended counterclaim. While the trial court's memorandum and order only referred to the costs incurred for the *Hartz* appeal and asserting count I of the Village's amended counterclaim incurred as of that time, its reasoning (as does our analysis) extends to indemnification for any and all attorney fees and costs the Village has incurred and will incur during the course

of the *Hartz* litigation, including asserting its counterclaim against the Rhoads Defendants, as requested in count II of its amended counterclaim.

¶ 39                                   B. Village's Authority to Vacate Property

¶ 40        Next, in count III of the Rhoads Defendants' amended counterclaim, they challenge the Village's authority to vacate certain property (part of 50th Street, 52nd Street, and Commonwealth Avenue, referred to as Outlot A, a/k/a Outlot D-3 by the Village) and sell the property to Hartz for compensation under the Waterford Ordinance. The Rhoads Defendants argue the Village's attempt to convey the property, which it failed to accept after over 115 years with no improvements, is ineffective because the property was accepted with the sole purpose of immediately transferring the property to Hartz for compensation. Consequently, the Rhoads Defendants assert the Village's attempted conveyance must comply with the *cy pres* doctrine. In its motion for reconsideration before the trial court, the Village sought to clarify the trial court's ruling that the Village had authority to vacate the subject property.

¶ 41        However, two issues complicate adjudication of count III of the Rhoads Defendants' amended counterclaim. First, the Rhoads Defendants rely upon some of the allegations from count II of their amended counterclaim that were incorporated into count III. As the trial court pointed out, the allegations in count II, which raised the argument about whether the Village properly accepted the property, were dismissed in 2007 on the Village's pleading motion and were not amended. The trial court affirmed the dismissal, with prejudice, in its summary judgment ruling; the Rhoads Defendants have not appealed the dismissal. Second, the Village requests clarification of the court's prior ruling in the December 2009 memorandum and order regarding its authority to vacate the subject property. Consequently, the trial court, as does this court, will construe count III of the Rhoads Defendants' amended counterclaim as raising a question of law about whether the Village's action was proper under the Code or whether the conveyance was subject to the *cy pres* doctrine.

¶ 42        As a threshold issue, we address the Rhoads Defendants' argument that the Plat Act (765 ILCS 205/3 (West 2008)), and not the Code (65 ILCS 5/11-91-1 (West 2008)), governs how the Village should have dealt with the dedicated property. The interpretation of a statute is a question of law, which is reviewed *de novo*. *Township of Jubilee v. State*, 2011 IL 111447, ¶ 23. We review the plain language of the statute in question to ascertain the legislative intent. *Nowack v. City of Country Club Hills*, 2011 IL 111838, ¶ 11.

¶ 43        As the trial court indicated, the Rhoads Defendants agreed that the Code provision (65 ILCS 5/11-91-1 (West 2008)) grants municipalities the authority to vacate certain streets without court approval. However, the Rhoads Defendants did not believe that the Code applied to the conveyance at issue and argued in their reply brief that the "[C]ode clearly does not apply to our facts." Yet, the Rhoads Defendants fail to cite any dispositive authority or assert any persuasive reasoning supporting their belief the Code is inapplicable to the facts here. While the Rhoads Defendants' brief contains a passing reference to the Code provision referring to real property acquired by eminent domain, the title of the Code division here refers to "Vacating of Streets and Alleys" and contains no language specifically limiting its

-12-

applicability to property acquired under eminent domain powers. Likewise, the reply brief's attempt to distinguish the Code provision fails to overcome our interpretation.

¶ 44    Additionally, just like the Code provision considered in the *Hartz* appeal (see *Hartz*, 391 Ill. App. 3d at 80), the plain language of section 11-91-1 of the Code also suggests the legislature did not intend to place restrictions on municipalities like the Village to vacate property once determining the vacating of the street will serve the public interest. See 65 ILCS 5/11-91-1 (West 2008) ("Whenever the corporate authorities of any municipality *** determine that the public interest will be subserved by vacating any street or alley, or part thereof, within their jurisdiction ***, they may vacate that street or alley, or part thereof, by ordinance" and "The determination of the corporate authorities *** is conclusive, and the passage of such an ordinance is sufficient evidence of that determination ***."). Even if the Village did not make any improvements to the vacated property, that does not negate the broad grant of authority conferred to the Village by the Code. Accordingly, section 11-91-1 of the Code governs and grants the Village authority to vacate the subject property by ordinance. Thus, we find the *cy pres* doctrine is inapplicable to the Village's action in vacating the subject property for Hartz's purchase.

¶ 45    Given our conclusion that the Code governed the Village's action in the relevant ordinance, we need not address the Village's additional argument that the Rhoads Defendants are estopped from challenging the Village's action. We note that the Rhoads Defendants did not respond to the estoppel arguments in the trial below, as the Village noted in its response brief with this court. Yet, this silence appears to be a litigation strategy, rather than a concession to the Village's position. Consequently, we find summary judgment was properly granted to the Village on count III of the Rhoads Defendants' amended counterclaim.

¶ 46                                C. Dedication of Outlot A

¶ 47    Lastly, the Rhoads Defendants argue that the trial court erroneously ruled they were required to dedicate certain property commonly referred to as Outlot A, which the Village states is also known as Outlot D-3, to the Village as part of the PUD referenced in Ordinance No. 04-2311. On the Village's motion for summary judgment at issue, the trial court initially denied the Village's motion, finding the plat attached to the Village's motion in the record was unclear in showing that the two parcels were the same property and that the ordinance and resolution constituted a binding contract between the Village and the Rhoads Defendants. Additionally, the trial court concluded that material facts existed about whether the Village demonstrated the Rhoads Defendants had benefitted from the ordinance and unjust enrichment applied. Further, the court stated the Village failed to adequately address the *ultra vires* affirmative defense.

¶ 48    On the Village's motion to reconsider, the Village submitted the unrefuted affidavit of Martin Scott, its director of community development, with plats and maps attached, indicating the Rhoads Defendants had received permits as a part of the Commonwealth PUD contemplated in Ordinance No. 04-2311. Additionally, the record indicates, and the trial court also noted, that the Rhoads Defendants admitted during oral argument at the hearing on the Village's motion for partial summary judgment that it received the benefits mentioned

-13-

in Ordinance No. 04-2311.

¶ 49    There is case law substantiating a developer waives any complaints imposed by the municipality when the developer accepts an ordinance's benefits. In *Plote, Inc. v. Minnesota Alden Co.*, 96 Ill. App. 3d 1001, 1002 (1981), the developer, Minnesota Alden, sought to enjoin the Village of Schaumburg from seeking sums purportedly due under the terms of an ordinance involving the developer's PUD. After the ordinance, which reclassified property to allow construction of the PUD on the property, was passed, building permits were issued and construction for the PUD proceeded. *Id.* Subsequently, the developer experienced financial issues that caused it to convey the PUD to a land trust in settling a foreclosure action. *Id.* The *Plote* court cited *Zweifel Manufacturing Corp. v. City of Peoria*, 11 Ill. 2d 489 (1957), in which our supreme court held the petitioners in that case had waived objections to certain conditions imposed in a zoning variation by accepting the benefits of the variation. *Plote*, 96 Ill. App. 3d at 1003 (citing *Zweifel*, 11 Ill. 2d at 493-94).

¶ 50    The Rhoads Defendants insist that Outlot A and Outlot D-3 are two different parcels of property, thus creating a genuine issue of material fact that precludes summary judgment for the Village. However, their argument is primarily based on plats that are admittedly not in the record. On December 22, 2011, the Rhoads Defendants filed a motion to supplement the record on appeal with plats recorded with the Cook County recorder of deeds that they sought this court to take judicial notice of and admit as evidence to support their contention. The Village filed a response opposing the motion, arguing in pertinent part that the Rhoads Defendants' submission failed to meet the standards under Illinois Supreme Court Rule 329 (eff. Jan. 1, 2006) and they failed to submit the documents to the trial court for consideration. It is axiomatic that this court may not consider documents that are not part of the certified record on appeal. See *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 14 (2009). Accordingly, we have denied the Rhoads Defendants' motion and will not consider the documents attached to their motion in considering the merits.

¶ 51    Alternatively, the Rhoads Defendants argue the record contains plats creating a genuine issue of material fact. In viewing the record, including the plat specifically identified by the Rhoads Defendants' counsel at oral argument here, we disagree with the Rhoads Defendants. The record, particularly the ordinance at issue, consistently identifies Outlot A and Outlot A-3 as property being approximately 3,000 square feet. Thus, regardless of the name given to the property, the unchanged property description is the overriding consideration.[4]

¶ 52    Furthermore, we agree with the trial court that the Rhoads Defendants have waived any complaints about the required dedication as they undisputedly received the benefits of the ordinance that enabled their construction of the Commonwealth Development. Hence, the Rhoads Defendants have to dedicate Outlot A, also referred to as Outlot D-3, to the Village as required by Ordinance No. 04-2311 and Resolution No. 06-915. Accordingly, we find that

---

[4]If the Rhoads Defendants prepared a plat dedicating property that did not match the description in Ordinance No. 04-2311, we consider the Rhoads Defendants hard-pressed to claim a mistake now after admittedly accepting the benefits from said ordinance.

summary judgment to the Village on count III of its amended counterclaim was proper.

¶ 53                                   III. CONCLUSION

¶ 54       In sum, we find the indemnification clause in the recapture agreement unambiguously obligates the Rhoads Defendants to reimburse the Village for its attorney fees and costs incurred in defending itself and its interests in the underlying suit, including asserting the related counterclaims. Implying a duty of cooperation would violate the plain language of the parties' agreement and well-established contract interpretation rules. Additionally, we find the Village had authority to vacate the subject property in accordance with the Code (65 ILCS 5/11-91-1 (West 2008)) and to allow Hartz to purchase said property as reflected in Ordinance No. 05-2358. Finally, we find the Rhoads Defendants failed to establish a genuine issue of material fact to preclude summary judgment for the Village requiring the Rhoads Defendants to dedicate the subject property as a condition in receiving the benefits afforded to them by Ordinance No. 04-2311. Accordingly, based upon the foregoing, we affirm the judgment of the circuit court of Cook County.

¶ 55       Affirmed.