# Illinois Official Reports

## Appellate Court

*Loncarevic & Associates, Inc. v. Stanley Foam Corp.*, 2017 IL App (1st) 150690

| | |
|---|---|
| Appellate Court Caption | LONCAREVIC AND ASSOCIATES, INC., an Illinois Corporation, Individually and as the Representative of a Class of Similarly-Situated Persons, Plaintiff-Appellee, v. STANLEY FOAM CORPORATION, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-0690 |
| Rule 23 order filed | December 20, 2016 |
| Rule 23 order withdrawn | February 6, 2017 |
| Rehearing denied | February 6, 2017 |
| Opinion filed | February 7, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-15403; the Hon. David Atkins, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Johnson & Bell, Ltd., of Chicago (David M. Macksey and Garrett L. Boehm, Jr., of counsel), for appellant.<br><br>Bock & Hatch, LLC, of Chicago (Phillip A. Bock and Jonathan B. Piper, of counsel), and Anderson & Wanca, of Rolling Meadows (Brian J. Wanca and Ryan M. Kelly, of counsel), for appellee. |

Panel    JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Neville and Simon concurred in the judgment and opinion.


**OPINION**


¶ 1    On two separate occasions in 2006, plaintiff Loncarevic and Associates, Inc., received an unsolicited one-page fax advertisement at its office in Illinois promoting the upholstery services of defendant, Stanley Foam Corporation. Thereafter, plaintiff brought a class action suit against defendant, claiming that the fax advertisements violated section 227 of the Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227 (2006)), section 2 of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2006)), and gave rise to a common-law claim for conversion. The circuit court granted summary judgment in favor of plaintiff on its TCPA claim, and defendant filed the instant appeal.

¶ 2    This appeal considers whether summary judgment was properly granted in favor of plaintiff on its TCPA claim. Defendant admits that (1) the faxes advertised its business, (2) the faxes were prepared at the direction of its independent contractor, (3) defendant paid for transmitting the faxes, and (4) it is liable for the unsolicited faxes sent to recipients in the New York, New Jersey, and Connecticut (tristate area). However, defendant contends it is not liable for the faxes sent to plaintiff (received in Illinois) because defendant never authorized the sending of faxes outside of the tristate area. Defendant argues that there are genuine issues of material fact regarding the authority of the independent contractor it employed and the company that broadcasted the faxes that should be decided by a jury.

¶ 3    Plaintiff contends that defendant is "directly liable" for the faxes which indisputably advertised defendant's business. The evidence adduced through discovery shows the owner of Stanley Foam gave its employee broad authority to make any decisions regarding the fax campaign, and this is sufficient to show the faxes were sent "on behalf of" defendant.

¶ 4    For the following reasons, we affirm the judgment of the circuit court.


¶ 5                         BACKGROUND

¶ 6    Plaintiff is a furniture restoration company domiciled in Illinois. Defendant, a New Jersey corporation, is a wholesale seller of foam and upholstery supplies.

¶ 7    Plaintiff filed a class action complaint alleging receipt of a one-page unsolicited fax on May 25, 2006, and July 27, 2006, advertising the services of Stanley Foam. Pertinent to this appeal, one of plaintiff's claims alleged that defendant violated section 227 of the TCPA (47 U.S.C. § 227 (2006)) in sending plaintiff the two unsolicited advertising faxes. The TCPA prohibits the sending of unsolicited fax advertisements and provides that monetary damages may be recovered for each violation in the amount of the party's actual pecuniary loss or $500, whichever is greater. 47 U.S.C. § 227 (2006).

¶ 8    The following facts appear in the record and were cited by the parties in their summary judgment briefs.

¶ 9    Richard Duranne testified at his deposition that he was the sole owner of Stanley Foam from 1989 until he sold it in 2008. There were five employees. In 2006, Duranne hired Bob

Christie,[1] an independent contractor, as a bookkeeper who worked part-time. Duranne's day-to-day responsibilities were to assist with daily operations and paperwork. The types of advertising he did were mostly flyers sent to customers in their customer base. He would send them postcards or flyers with advertising specials. In 2006, defendant began fax advertising. When asked who made that decision, Duranne answered, "Bob Christie. I gave him complete authority." When Christie approached Duranne with a proposal with rates for fax advertising, Duranne "told him, Bob, the only thing that it would help us with is if it was close to our shipping point. And I mentioned to him and I gave him a couple notes, because I wanted him to understand it was basically the northeastern area, close to where we operate out of. Shipping becomes a big factor in that." Duranne later left Christie a note saying "Bob, if you are going to do any type of advertising, you have to keep it close to our facility, because we can't ship any other way." When Christie saw the note, he told Duranne, "I understand, and we're going to keep it very close." According to Duranne, this "very close" area included New York, New Jersey, Connecticut, and portions of Pennsylvania. Duranne never authorized faxes to be sent outside the tristate area.

¶ 10      Later, when Christie informed Duranne that he contracted with a company to send faxes on behalf of Stanley Foam, Duranne responded, "[w]ell, if you've checked it thoroughly and you think it's good, then you do what you think is best." At his deposition, Duranne reviewed a copy of a fax Christie sent to Business to Business Solutions (B2B), the marketing company that actually sent the faxes, and recognized Christie's handwriting on it. While Duranne testified to approving the fax advertisement campaign, he nonetheless claimed to have had little involvement in the specifics. He testified that he cannot recall seeing more than one of the fax advertisements and that Christie "had control over everything. I didn't, he was doing a fine job." In fact, Duranne was not aware of B2B or that Stanley Foam was its client. Other than telling Christie to "stay specifically in close areas to our company business," he did not have any other conversation with Christie about coverage for the Stanley Foam fax campaign. Duranne gave Christie "full control so that he did what he thought was best for the company advertisement." Duranne did not investigate whether it was legal to send advertising faxes and he did not know if Christie did such an investigation. If Duranne had known defendant could be liable for sending the unsolicited advertising faxes, he would "absolutely not" have authorized Christie to pursue fax advertising.

¶ 11      Caroline Abraham, owner of B2B, was also deposed. Her deposition largely concerned the general structure and operations of B2B. Abraham would fax an advertisement to potential clients about fax advertising opportunities and their pricing. On April 27, 2006, B2B faxed such a form to defendant which requested information about Stanley Foam's business for use in preparing a fax advertisement. Abraham was uncertain whether the communications from defendant were sent by Duranne, Christie, or someone else. She never sought clarification as to the specific person communicating on behalf of Stanley but had no doubt that Christie had the authority to order the advertising faxes. One fax B2B received from Stanley Foam lists "Bob" as the sender, but another fax message had Duranne's name on it. In B2B's client list, Duranne is listed as the contact name for Stanley Foam, with a "comment" of "contact Bob Christie, account 392." Abraham also testified that she was aware from Christie's prior fax that defendant wanted to send the faxes to "New Jersey and New York and Connecticut," but when

---

[1]Christie died in 2009.

she received a May 25, 2006, fax from Stanley Foam instructing her to "work[ ] west" until 6000 faxes were sent, we "start[ed] adding on states one by one until they got up to the 6,000."

¶ 12 According to exhibits found in the record, defendant completed the B2B advertising request form containing defendant's contact information and descriptions of its products. Christie forwarded this form to B2B, which created several sample fax ads and forwarded those ads to Stanley Foam for approval. Christie made handwritten changes to the sample ads and returned the edited advertisements to B2B. On May 4, 2006, Christie faxed a revised advertisement instructing that the faxes to be sent to "the states of NJ, NY and CT. Send to upholsters—not suppliers. It may take more than one time to meet 5,000." On May 25, 2006, defendant sent B2B a check for the transmission of faxes which was accompanied by a typewritten memo instructing B2B that "coverage is the entire USA starting on the East Coast and working west until the 6,000 runs out." Christie made another fax order on July 25, 2006, with instruction to B2B that "Ad is same format as before."

¶ 13 B2B's hard drive contained B2B's archived fax transmission logs, copies of the faxes, and other documents. Two documents labeled "StanleyFoamCartoon" dated May 25, 2006, and July 27, 2006, were recovered from the hard drive along with a record showing a total of 7858 attempted fax transmissions. Of those attempts, a total of 4361 faxes were successfully sent to over 2000 different fax numbers.

¶ 14 During discovery, defendant admitted that the faxes at issue described the commercial availability of its property, goods, or services but denied that the faxes were sent on Stanley Foam's behalf. Defendant filed an affirmative defense asserting that it cannot be held liable under the TCPA because the faxes were "not sent to any facsimile machine on behalf of or at the direction of Stanley Foam."

¶ 15 Plaintiff filed a motion for class certification. Defendant objected to plaintiff's motion and argued that Stanley Foam could not be held vicariously liable for the actions of its independent contractor, Bob Christie, who directed the fax campaign carried out by B2B. Christie had been authorized to engage in fax advertising for the tristate area only (New York, New Jersey, and Connecticut). Christie and B2B exceeded the authority granted by defendant in sending faxes outside the area, including to plaintiff in Illinois. Therefore, defendant argued, it is not liable to plaintiff, and plaintiff could not represent the purported class. On April 4, 2013, the circuit court certified a class consisting of persons who were successfully sent one or more faxes by or on behalf of defendant.

¶ 16 Thereafter, defendant filed a motion to reconsider the class certification and a motion for summary judgment based on its vicarious liability defense. The circuit court denied both motions finding that several issues of material fact remained in dispute, including "the issues of actual versus apparent authority so that summary disposition would be wholly inappropriate."

¶ 17 On May 5, 2014, plaintiff moved for summary judgment on the TCPA claim, arguing that there is no issue of material fact that (1) defendant directed the faxes to be sent on its behalf; (2) the faxes were unsolicited advertisements, as defined by the TCPA, sent to all class members; and (3) it was undisputed that, at a minimum, defendant is liable to the tristate area class members for TCPA violations. Plaintiff argued that summary judgment should be granted on the TCPA claim because Christie had apparent authority to send the faxes outside the tristate area and that defendant is directly liable regardless of its vicarious liability defense because of the Federal Communication Commission's (FCC) interpretation of the TCPA.

¶ 18 In response, defendant argued plaintiff's summary judgment motion on the issue of apparent authority should be denied because the circuit court previously recognized that there were disputed facts when it denied defendant's summary judgment motion. Defendant cited to plaintiff's brief opposing defendant's summary judgment motion where plaintiff argued that, at a minimum, there were genuine issues of material fact as to Christie's apparent authority. Defendant argued that the evidence in the record does not resolve the disputed factual question of whether Christie had apparent authority to direct B2B to send faxes outside the tristate area.

¶ 19 On February 5, 2015, the circuit court entered a written order granting summary judgment in favor of plaintiff on its TCPA claim. The circuit court found it was undisputed that (1) defendant hired Christie and gave him the authority to hire B2B, (2) Christie edited a sample advertisement and sent the approved version to B2B, (3) Christie ordered B2B to send the approved faxes "with the instruction that coverage is the entire USA starting on the East Coast and working west until the 6,000 [faxes] run out," and (4) Christie later requested a second fax with the "same format as before."

¶ 20 The circuit court concluded that "defendant has failed to provide any evidence to dispute these facts and, instead, merely claims that Mr. Duranne was under the impression that Mr. Christie was only ordering faxes within the tristate area." Therefore, it is clear that defendant is "directly liable for all of the faxes transmitted by B2B as the undisputable source of the offending behavior," and defendant failed to offer evidence to dispute the conclusion that Christie actively participated in the marketing campaign and was given " 'complete authority' to do what he thought was best." Simply put, "there is no dispute that defendant caused and ratified the conduct that the plaintiff class now complains of," and "there is no dispute in this case that the fax transmissions did originate with an order and payment from the defendant." The court also found that "even if direct liability does not apply, Stanley Foam is still liable as a matter of law under common law principles of vicarious liability." The court made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) as to its judgment in favor of plaintiff on the TCPA claim. Defendant timely filed this appeal.

¶ 21 ANALYSIS

¶ 22 On appeal, defendant argues that the trial court erred in granting summary judgment in favor of plaintiff where defendant contends that it did not authorize B2B to send the advertising faxes outside of the tristate area. Defendant asserts there are numerous questions of material fact involved in determining whether it is a "sender" of the unauthorized faxes. It argues that to the extent it is liable for sending unsolicited fax advertising, such liability is limited to unsolicited faxes sent to recipients in the tristate area, because they were sent "on behalf of" Stanley Foam. Defendant asks this court to reverse the circuit court's entry of summary judgment and remand for trial on the issue of (1) the scope of authority granted by defendant to Christie and (2) the scope of authority granted by defendant or Christie to B2B.

¶ 23 Summary judgment is appropriate " 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Irwin Industrial Tool Co. v. Department of Revenue*, 238 Ill. 2d 332, 339-40 (2010) (quoting 735 ILCS 5/2-1005(c) (West 2008)). The purpose of summary judgment is to determine whether there are triable issues of fact. *Hartz Construction Co. v. Village of Western Springs*, 2012 IL App (1st)

103108, ¶ 23. We review the circuit court's decision to grant summary judgment *de novo*. *Evans v. Brown*, 399 Ill. App. 3d 238, 244 (2010).

¶ 24 The TCPA prohibits the use of any fax machine or other device to send unsolicited advertising faxes. *Uesco Industries, Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App (1st) 112566, ¶ 52. The purpose of the TCPA is to prevent the transmission of "junk faxes" which intrudes into the privacy interests of phone customers and causes the recipient to assume the cost of paper and ink used to receive the unsolicited faxes. *Id.*; *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 27. Upon finding that a defendant "willfully or knowingly violated the [TCPA], the court may award treble damages." *Uesco Industries*, 2013 IL App (1st) 112566, ¶ 53.

¶ 25 In the instant case, it is undisputed that (1) plaintiff received the two unsolicited advertising faxes sent by B2B that advertised Stanley Foam's product; (2) Christie, on behalf of defendant, approved the substance and content of the faxes; and (3) defendant employed and paid B2B to transmit the faxes advertising Stanley Foam's product and business.

¶ 26 However, the parties dispute whether the faxes sent outside of the tristate area were transmitted "on behalf of" defendant. Plaintiff contends that Stanley Foam, through Duranne, gave its bookkeeper, Christie, broad discretion to engage in an advertising fax campaign and that Christie, in the exercise of that discretion, hired B2B to send the faxes and further instructed B2B to send faxes west of the tristate area. Conversely, defendant argues it cannot be held liable for unsolicited faxes sent to plaintiff because Christie only had the authority to send the advertising faxes to customers in the tristate area, and therefore, the faxes sent to plaintiff in Illinois were sent outside the tristate area, unauthorized, and not sent "on behalf of" defendant.

¶ 27 The circuit court found that defendant failed to provide any evidence to dispute the facts in the record that (1) defendant hired Christie and gave him " 'complete authority' to do what he thought was best," (2) Christie edited a proposed advertising fax and approved a final version sent to B2B in May 2006, (3) Christie faxed a copy of a check to B2B with the instruction that "coverage is the entire USA starting on the East Coast and working west until the 6,000 [faxes] run out," and (4) Christie later ordered a second fax from B2B with the instruction to B2B that "Ad is same format as before." The court observed that "[a]lthough it may be true that an internal miscommunication occurred between Mr. Duranne and Mr. Christie, defendant clearly intended to order and pay for a mass transmission of unsolicited fax advertisements. In other words, there is no dispute that defendant caused and ratified the conduct that the plaintiff class now complains of." The circuit court concluded that defendant "qualifies as a 'sender' under the TCPA," is the source of the offending behavior, "and is, therefore, directly liable for both the intended and unintended consequences of its decision to transmit unsolicited fax advertisements."

¶ 28 To prevail on a TCPA claim, plaintiff must show that (1) defendant used a fax machine, computer, or other device to send one or more faxes to plaintiff's fax machine; (2) the faxes contained material advertising the " 'commercial availability [or quality] of any property, goods, or services' "; and (3) plaintiff did not give prior permission or express invitation for defendant to send the fax. *Saf-T-Gard International, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 314 (N.D. Ill. 2008). To satisfy the first element, the fax must have been sent by the defendant or on behalf of the defendant. *Palm Beach Golf Center—Boca, Inc. v. Sarris*, 781 F.3d 1245, 1254 (11th Cir. 2015). For the purposes of the TCPA, a "sender" is defined as "the

person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10) (2012). "In most instances, [the sender] will be the entity whose product or service is advertised or promoted in the message." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 FCC Rcd. 3787, 3808 (2006).

¶ 29    In *Sarris*, the plaintiff received an unsolicited fax from Sarris, a dentist, who gave a marketing manager free reign to market his dental practice. Later, the marketing manager hired and paid B2B to send mass fax advertisements. The District Court granted summary judgment in favor of Sarris finding that the plaintiff could only prevail on the theory of vicarious liability: that the marketing manager was acting within the scope of his employment with the dentist when he hired B2B and that the facts showed it could not prove this fact. *Sarris*, 781 F.3d at 1249. The conclusion regarding establishing vicarious liability was premised on the FCC decision in *In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd. 6574 (2013). The Eleventh Circuit reversed, finding that the District Court's reliance on *DISH Network* to hold that the plaintiff must establish vicarious liability under the statute when a third party sends unsolicited faxes on behalf of an advertiser was misplaced. *Sarris*, 781 F.3d at 1255. After considering and accepting the FCC's interpretation of who qualifies as a "sender" for purposes of liability under the TCPA (*id.* at 1257), the *Sarris* court held that "the TCPA provided for direct liability for an entity on whose behalf goods or services were promoted by unsolicited fax advertisement." *Id.* at 1256. Finally, *Sarris* reversed the lower court grant of summary judgment in favor of the defendant advertiser finding there was sufficient evidence to establish an issue of fact as to whether the offending faxes were sent on behalf of Sarris where the defendant hired a marketing manager, who, in turn, hired B2B, and B2B sent the offending faxes to plaintiff. *Id.* at 1258.

¶ 30    In *Bridgeview Health Care Center, Ltd. v. Clark*, 816 F.3d 935 (7th Cir. 2016), the Seventh Circuit also held that *DISH Network* was inapplicable to junk-fax cases and additionally held "that agency rules are properly applied to determine whether an action is done 'on behalf' of a principal." *Id.* at 938; but see *Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 897 (6th Cir. 2016) (declining to adopt the Seventh Circuit's decision to "focus solely on agency principles when the FCC itself has declined to do so," but "[t]his is not to say that we should ignore all agency principles when assessing liability under the TCPA"). The *Bridgeview* court analyzed the evidence at trial and determined that the defendant, Clark, did not give the fax transmittal company, B2B, express, implied, or apparent authority to send faxes outside the Terre Haute, Indiana, area, and therefore, Clark was not liable for the fax sent to Bridgeview which was located outside Terre Haute. *Bridgeview*, 816 F.3d at 938. Relevant to this case, the *Bridgeview* court applied agency principles and concluded that the evidence at trial showed that the defendant advertiser (Clark) did not authorize and was not aware that B2B sent faxes outside his area, and Clark did not "speak, write, or otherwise act toward a third party" (the fax recipient, Bridgeview) "to create an appearance that B2B had authority to send faxes on behalf of" Clark. *Id.* at 939. "In short, B2B made an independent decision to blast faxes across multiple state lines." *Id.*

¶ 31    We agree with the analysis and conclusion of *Bridgeview* that when determining whether a defendant is a "sender" under the TCPA, where the sender did not transmit the fax, application of agency principles is proper in determining liability. Applying agency principles in this case, after reviewing the parties' submissions, the operative complaint, and the discovery on file, we

find that the trial court was correct when it found that there is no genuine issue of material fact that defendant was the "sender" of the unsolicited advertising faxes transmitted by B2B on behalf of Stanley Foam that were received by plaintiff, a business located outside the tristate area.

¶ 32    The "on behalf of" inquiry considers various factors including the degree of control exercised over the preparation of the faxes by the company advertising its services, whether that company approved the final content of the faxes as they were broadcast, and the nature and terms of the contractual relationship between the fax broadcaster and company advertising its services. See *Sarris*, 781 F.3d at 1258.

¶ 33    Here, defendant admits that it initiated and approved the fax campaign, engaged B2B to send the faxes, paid B2B for the transmission of the faxes, and that it is liable for the sending of unsolicited faxes within the tristate area. Although defendant contends that it did not authorize Christie or B2B to transmit the faxes outside the tristate area, Duranne testified that he had little involvement in the specifics of the fax campaign and admittedly gave Christie "complete authority" to run the fax campaign with broad discretion to do "what he thought was best." Defendant admits that Christie edited a sample fax and approved a final version. According to the record, on May 25, 2006, B2B received a check issued by defendant in payment for the fax campaign along with an accompanying fax instructing B2B to send faxes west from the East Coast until 6,000 faxes were transmitted. Caroline Abraham, owner of B2B, testified that although she had earlier received instructions to transmit faxes only within the tristate area, when she received the May 25, 2006, instructions that "coverage is the entire USA starting on the East Coast and working west until the 6,000 [faxes] run out," B2B started transmitting faxes outside the tristate area. In addition, on July 25, 2006, Christie sent B2B a second order for the transmittal of additional faxes with the instruction that "Ad is same format as before."

¶ 34    Defendant argues that Duranne's deposition establishes material questions of fact exist regarding Christie's authority to send faxes outside of the tristate area. We disagree. It is clear from Duranne's deposition that, although he may not have been aware of Christie's specific orders and communications with B2B, Duranne specifically admitted that he gave Christie "complete authority" and broad discretion "to do what he thought was best." Admittedly Duranne did not concern himself with the specifics of the fax campaign and did not have further conversations regarding the campaign with Christie, however, this does not absolve Stanley Foam from liability under the TCPA.

¶ 35    Based on this record, we find that there is no genuine issue of material fact that the faxes at issue were prepared, approved, and paid for by defendant, through the acts of its employee, Christie, under specific and broad authority to advertise as he saw fit. Therefore, we find that the faxes sent outside of the tristate area were sent "on behalf of" defendant.

¶ 36    We reach the same result when examining whether the faxes were sent "on behalf of" defendant under the theory of apparent agency. Although existence and scope of an agency relationship are usually questions of fact, this issue may be summarily decided where the parties' relationship is clear. See *Plooy v. Paryani*, 275 Ill. App. 3d 1074, 1086 (1995). "[A]n agent may bind his principal by acts which the principal has not given him *actual* authority to perform, but which he *appears* authorized to perform." (Emphases in original.) *Lundberg v. Church Farm, Inc.*, 151 Ill. App. 3d 452, 461 (1986). "A principal that places an agent in a situation where the agent may be presumed to have authority to act is estopped as against a third party from denying the agent's apparent authority." *Weil, Freiburg & Thomas, P.C. v.*

*Sara Lee Corp.*, 218 Ill. App. 3d 383, 390 (1991). Furthermore, "[w]here parties silently stand by and permit an agent to act in their behalf in dealing with another in a situation where the agent may be presumed to have authority, the parties are estopped from denying the agent's apparent authority as to third persons." *Mateyka v. Schroeder*, 152 Ill. App. 3d 854, 864 (1987).

¶ 37     As set forth above, Duranne, president of Stanley Foam, gave Christie, Stanley Foam's bookkeeper, "broad authority" to carry out the fax campaign. Duranne chose to have little involvement with Christie's performance of these duties and gave Christie "complete authority" in running the campaign, with broad discretion to do "what he thought was best." In effect, Duranne chose to "silently stand by and permit" Christie to control the breadth of the fax campaign, hire B2B, and authorize the transmittal of the faxes.

¶ 38     From the perspective of B2B, there was no factual reason to presume that the instructions and directions it received from Christie were unauthorized or beyond the scope of the authority given him by Stanley Foam. B2B, according to Abraham, received faxes from "Bob" at Stanley Foam approving the advertisement's design and instructing B2B on where and how many faxes to transmit. B2B had no reason to doubt Christie's apparent authority in conducting the campaign. Ultimately, B2B was tendered a check issued by Stanley Foam to transmit the faxes to recipients outside of the tristate area, including plaintiff. While the question of whether Christie should have authorized B2B to send faxes outside the tristate area, may be the result of "an internal miscommunication" between Duranne and Christie, it is of no consequence when a third party, B2B, reasonably presumed and relied on Christie's apparent authority in ordering and approving the fax campaign that resulted in plaintiff receiving the unsolicited, Stanley Foam-approved faxes advertising its upholstery supplies. Therefore, under agency principles, we find the faxes sent outside the tristate area, including those sent to and received by plaintiff, were sent "on behalf of" defendant, and Stanley Foam is estopped from asserting Christie acted beyond the scope of his authority. No material question of fact exists that would preclude summary judgment in favor of plaintiff.

¶ 39     Lastly, defendant argues that allowing plaintiff to prevail would open the door to "sabotage liability," where a rogue person could send unsolicited fax advertising by or on behalf of an entity that did not know or approve of the fax. However, in the case *sub judice*, there are no facts to support this fear. The record establishes that Duranne approved the fax campaign, gave Christie "complete authority" in running the campaign, Christie edited drafts and approved the fax advertisements for distribution on several occasions, and defendant issued a check in payment for the fax advertising. Defendant is estopped from denying Christie's apparent authority as it relates to B2B. Clearly, this record does not contain facts to support defendant's theory of "sabotage liability."

¶ 40                                          CONCLUSION

¶ 41     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 42     Affirmed.